UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ANN WANG,

                    Plaintiff,

        -against-                              MEMORANDUM & ORDER
                                              15-CV-1773 (JS)(ARL)
GOVERNMENT EMPLOYEES INSURANCE
COMPANY,

                    Defendant.
----------------------------------X
APPEARANCES
For Plaintiff:      Tiffany Ma, Esq.
                    Young & Ma LLP
                    575 Lexington Avenue
                    New York, New York 10022

For Defendant:      Lisa Marie Griffith, Esq.
                    William H. Ng, Esq.
                    Littler Mendelson P.C.
                    532 Broadhollow Road, Suite 142
                    Melville, New York 11747

                    Barry I. Levy, Esq.
                    Rivkin Radler LLP
                    926 RXR Plaza
                    Uniondale, New York 11556

SEYBERT, District Judge:

        Ann Wang ("Plaintiff"), an attorney for Government

Employees Insurance Company ("GEICO"), brings various claims for

discrimination, retaliation, harassment, unequal wages, and

intentional and negligent infliction of emotional distress.

Currently pending before the Court is GEICO's motion to dismiss

the Complaint under Federal Rule of Civil Procedure 12(b)(6).

(Docket Entry 10.) For the following reasons, GEICO's motion is
GRANTED.

BACKGROUND[1]

I.  Factual Background

Plaintiff, an Asian-American female, has worked as an
attorney at GEICO for over ten years. (Compl., Docket Entry 1,
¶¶ 2-3, 12.) GEICO is an insurance provider to over thirteen
million customers in the United States.[2] Plaintiff resides on Long
Island, New York and has worked at one of GEICO's Long Island
offices since June 2010. (Compl. ¶¶ 1, 3.)

The Complaint alleges that "GEICO has engaged in a
widespread, deep-rooted racially discriminatory employment
practice of paying [Plaintiff] and other minority female employees
less than it pays Caucasian and male employees." (Compl. ¶ 38.)
Despite her "exemplary record and superior qualifications,"
Plaintiff alleges that GEICO denied her promotions and bypassed
her for preferred work assignments. (Compl. ¶¶ 11, 17.)
Particularly, Plaintiff claims that she "repeatedly expressed to

_____

[1] The facts alleged in the Complaint are presumed to be true for
the purposes of this Memorandum and Order. Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 572, 127 S. Ct. 1955, 1975, 167 L. Ed. 2d
929 (2007) ("[A] judge ruling on a defendant's motion to dismiss
a complaint must accept as true all of the factual allegations
contained in the complaint." (internal quotation marks and
citation omitted)).

[2] GEICO, https://www.geico.com/information/aboutinsurance/
auto/geico-business-model/ (lasted visited Mar. 31, 2016).

her supervisors and colleagues her desire to be promoted to a more senior level attorney" but did not receive the promotion.  (Compl. ¶ 16.)

Based on this alleged discrimination, Plaintiff filed an internal complaint on May 5, 2014 and a charge with the Equal Employment Opportunity Commission (the "EEOC Charge") on August 12, 2014.  (Compl. ¶ 10.)  "Before, during and after the internal complaint and EEOC Charge," GEICO treated Plaintiff like a "traitor."  (Compl. ¶ 29.)  Specifically, GEICO supervisors criticized Plaintiff's work, placed her under close scrutiny, and gave her negative performance reviews.  (See, e.g., Compl. ¶¶ 30-31, 35.)

## II.  Procedural History

This lawsuit followed on April 1, 2015.  (See Compl.) Plaintiff asserts claims under Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq. ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"); section 1981 of the Civil Rights Law, 42 U.S.C. § 1981 ("Section 1981"); the Equal Pay Act, 29 U.S.C. § 206, et seq. ("EPA"); the Lily Ledbetter Fair Pay Act, 42 U.S.C. § 2000e-5 ("FPA"); and theories of both intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED").

GEICO moves to dismiss the Complaint. (Docket Entry 10.) GEICO first argues that many of Plaintiff's allegations are time-barred under the statute of limitations applicable to each claim. (Def.'s Br., Docket Entry 12, at 5-8.) GEICO further argues that Plaintiff has failed to plausibly allege each claim. (Def.'s Br. at 8-24.) Plaintiff rejects both of these arguments, asserting that her claims are timely and adequately pleaded. (See Pl.'s Br., Docket Entry 18.)

## DISCUSSION

As an initial matter, Plaintiff impermissibly makes several new allegations in her brief, so the Court will not consider them.[3] See Friedl v. City of N.Y., 210 F.3d 79, 83-84 (2d Cir. 2000) (concluding that a district court errs when it "relies on factual allegations contained in legal briefs or memoranda"). Moreover, Plaintiff repeatedly requests the need for discovery, (Pl.'s Br. at 10, 16-17), even though she asserted that she and her attorneys "have thoroughly investigated the facts of this matter." (Pl.'s Br. at 1.) But the Court notes that "a plaintiff whose 'complaint is deficient under Rule 8 . . . is not entitled to discovery.'" S. Cherry Street, LLC v. Hennessee Grp. LLC, 573 F.3d 98, 114 (2d Cir. 2009) (quoting Ashcroft v. Iqbal,

---

[3] (Compare Pl.'s Br. at 3 with Compl. ¶ 40; compare Pl.'s Br. at 3, 17 with Compl. ¶ 32.)

4

556 U.S. 662, 686, 129 S. Ct. 1937, 1954, 173 L. Ed. 2d 868 (2009)

(ellipsis in original)).

I.  Legal Standard

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974.  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.  Although the Court must accept all allegations in the Amended Complaint as true, this tenet is "inapplicable to legal conclusions." Id.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted).  Ultimately, the Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679, 129 S. Ct. at 1950.

In deciding a motion to dismiss, the Court is generally confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998).  However, the Court may consider "any written instrument attached to [the complaint] as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the

complaint." _Sira v. Morton_, 380 F.3d 57, 67 (2d Cir. 2004) (internal quotation marks and citations omitted); _see also_ _Chambers v. Time Warner, Inc._, 282 F.3d 147, 153 (2d Cir. 2002) (observing that a document is "integral" if the complaint "relies heavily upon its terms and effect") (internal quotation marks and citation omitted); _accord_ _Gregory v. Daly_, 243 F.3d 687, 691 (2d Cir. 2001) (noting that the EEOC complaints are an "integral part of [the] pleadings"); _Muhammad v. N.Y. City Trans. Auth._, 450 F. Supp. 2d 198, 204-05 (E.D.N.Y. 2006) (An "EEOC charge and the [state] agency's determination are both public records, of which this Court may take judicial notice.") (citing _Moll v. Telesector Res. Grp., Inc._, No. 04-CV-0805, 2005 WL 2405999, at *4 (W.D.N.Y. Sept. 29, 2005).

The Court, moreover, make take judicial notice of the location of any GEICO offices based on Google Maps. _Tutor Time Learning Ctrs., LLC v. KOG Indus., Inc._, No. 12-CV-4129, 2012 WL 5497943, at *5 n.4 (E.D.N.Y. Nov. 13, 2012) (allowing courts to take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned") (citing FED. R. EVID. 201(b); _Maynard v. Harrah's Entm't, Inc._, No. 09-CV-3128, 2010 WL 1930263, at *5 n.6 (E.D.N.Y. May 11, 2010). In light of the above, the Court will consider both the EEOC Charge and a map showing the location of

the GEICO offices in Long Island, New York.  (<u>See</u> Mahler Decl. Ex.

D, Docket Entry 11-1, at 18.)[4]

## II.   Timeliness of Claims

GEICO first argues that several claims are limited to specific time periods because Plaintiff failed to comply with the applicable statute of limitations.  However, as the Complaint lacks specific details on the timing of the events at issue, the Court finds that it is premature to consider whether certain portions of the claims are time-barred.

## III. Disparate Treatment

Discrimination claims are generally analyzed under the burden-shifting framework established by the Supreme Court in <u>McDonnell Douglas Corporation v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).[5]  <u>See</u> <u>Littlejohn v. City of N.Y.</u>, 795 F.3d 297, 312 (2d Cir. 2015) (citing <u>Ruiz v. Cty. of Rockland</u>, 609 F.3d 486, 491 (2d Cir. 2010)).  Under this framework, the plaintiff bears the initial burden of demonstrating a <u>prima</u> <u>facie</u> case of discrimination.  <u>McDonnell Douglas</u>, 411 U.S. at 802, 93 S. Ct. at 1824.  The defendant then bears the burden of establishing

---

[4] For the purposes of this Memorandum and Order, the Court will use the page numbers generated by the Electronic Case Filing System when referring to the parties' exhibits.

[5] Discrimination claims brought under Title VII, NYSHRL, and Section 1981 are analytically similar, and thus, the Court will consider them simultaneously.  <u>See</u> <u>Bowen-Hooks v. City of N.Y.</u>, 13 F. Supp. 3d 179, 209-10 (E.D.N.Y. 2014).

a "legitimate, non-discriminatory reason" for its actions.  <u>Id.</u>
If the defendant makes such a showing, the burden shifts back to
the plaintiff to establish that the defendant's explanation is
merely pretextual.  <u>Id.</u>

At the pleadings stage, however, a plaintiff need not
plead a <u>prima facie</u> case of discrimination.  <u>See</u> <u>Swierkiewicz v.</u>
<u>Sorema N.A.</u>, 534 U.S. 506, 510, 122 S. Ct. 992, 997, 152 L. Ed. 2d
1 (2002) (finding that the <u>McDonnell Douglas</u> framework only applied
at the summary judgment phase because it is "an evidentiary
standard, not a pleading requirement"); <u>Vega v. Hempstead Union</u>
<u>Free Sch. Dist.</u>, 801 F.3d 72, 84 (2d Cir. 2015).  Rather, a
complaint need only contain "'a short and plain statement of the
claim showing that the pleader is entitled to relief.'"
<u>Swierkiewicz</u>, 534 U.S. at 512, 122 S. Ct. at 998 (quoting F<span style="font-variant:small-caps">ED</span> R.
C<span style="font-variant:small-caps">IV</span>. P. 8(a)(2)); <u>accord</u> <u>Rodriguez v. Verizon Telecom</u>, No. 13-CV-
6969, 2014 WL 6807834, at *3 (S.D.N.Y. Dec. 3, 2014) (noting that
courts still consider the <u>prima facie</u> elements of a discrimination
claim to determine whether the complaint sufficiently provides the
defendant with fair notice) (citation omitted).

Here, Plaintiff has not adequately pleaded her
discrimination claims.  For a discrimination claim to survive a
motion to dismiss, a plaintiff must plausibly allege that: "(1) the
employer took adverse action against him and (2) his race, color,
religion, sex, or national origin was a motivating factor in the

employment decision." Vega, 801 F.3d at 86; see also Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (noting that "[a] materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities," and so on (internal quotation marks and citation omitted)).

Simply put, Plaintiff has not plausibly alleged that she was paid less than similarly situated non-Asian or female employees. Instead, the Complaint contains only oblique references to pay disparities. (See, e.g., Compl. ¶ 28 ("[Plaintiff] knows of at least one White female attorney at her same level making more money than her.").) Without more, Plaintiff fails to "nudge[] [her] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974.

Plaintiff has also failed to plausibly allege that GEICO discriminated against herself by failing to promote her. Plaintiff claims that she "repeatedly expressed to her supervisors and colleagues her desire to be promoted to a more senior level attorney," and despite her "exemplary record and superior qualifications," Plaintiff did not receive the promotion. (Compl. ¶¶ 16-17.) But ignoring this desire, on its face, does not necessarily mean that GEICO took an adverse action against Plaintiff. Separately, the Court notes that these allegations

conflict with the EEOC Charge, in which Plaintiff states that "[h]aving put [her] head down for a decade and having given everything to [GEICO] waiting for appropriate recognition, [Plaintiff] decided to apply for the [supervisory attorney] position on October 21, 2013." (EEOC Charge, Mahler Decl. Ex. A, Docket Entry 11-1, at 9, ¶ 10.) In other words, Plaintiff did not apply to be promoted to supervisory attorney until she spent ten years with GEICO. On that basis, the Court will disregard the allegations in the Complaint that Plaintiff expressed a repeated desire to be promoted. See Poindexter v. EMI Record Grp., Inc., No. 11-CV-0559, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true.").

Nor does Plaintiff elaborate on what her "superior qualifications" are or even discuss her "exemplary record" in further detail. Instead, Plaintiff argues that she "has been passed over by at least three White male attorneys who have equal or less experience to herself." (Comp. ¶ 28.) And the EEOC Charge states, flatly and with little support, that Plaintiff "had one of the strongest litigations records of those who applied [for the

supervisory position]." (EEOC Charge at 10, ¶ 17.) These scant details do not satisfy the standard under Rule 8.[6]

Plaintiff has also failed to plausibly allege claims based on race and national origin. Absent from the Complaint are any allegations that GEICO employees made racial or national origin-related comments that suggested a discriminatory intent. For instance, the EEOC Charge indicates that forty individuals applied for the supervisory position that Plaintiff did not receive. (EEOC Charge at 9, ¶ 15.) Five candidates were selected--four were Caucasian and one African-American.[7] (Compl. ¶¶ 23, 26.) Plaintiff alleges that two of the five selected attorneys had less experience than her. (Compl. ¶ 24.) Even if seniority was a factor, at least three of the attorneys had more experience than Plaintiff. But more importantly, there are no facts alleged that Plaintiff was passed over because of her race or national origin. (EEOC at 9, ¶ 16); cf. De La Peña v. Metro. Life Ins. Co., 953 F. Supp. 2d 393, 413 (E.D.N.Y. 2013) ("The fact that the

---

[6] Moreover, Plaintiff concedes that she needs to conduct discovery to unearth "internal promotional policies . . . that might have prevented Plaintiff from actively seeking a promotion." (Pl.'s Br. at 10 (emphasis added).) Plaintiff further states that "discovery is necessary to investigate preferential treatment of White male attorneys . . . and whether those individuals made more than an expression of a future goal when compared to the Plaintiff." (Pl.'s Br. at 10.)

[7] Plaintiff downplays this diversity by referring to the African-American attorney as a "token minority." (Compl. ¶ 26.)

Plaintiff was the only Filipino in his office is not sufficient to connect the Defendants' actions and behavior to a discriminatory intent."), aff'd, 552 F. App'x 98 (2d Cir. 2014).  Plaintiff also fails to identify any specific qualifications for the job or the race and national origin for the entire applicant pool.  According to Plaintiff, she "also discovered in a second round of interviews for the same position, every applicant was interviewed and all available positions were filled with Caucasian attorneys." (Compl. ¶ 27 (emphasis in original).)  But Plaintiff does not clarify whether she applied for the second round of interviews or identify the gender of each applicant.

Although her burden is minimal at the pleadings stage, Plaintiff must still provide "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Swierkiewicz, 534 U.S. at 512, 122 S. Ct. at 998 (quoting Fed R. Civ. P. 8(a)(2)).  She has failed to do so.  Thus, Plaintiff's discrimination claims under Title VII, NYSHRL, and Section 1981 are DISMISSED WITHOUT PREJUDICE.

IV.  Hostile Work Environment

Plaintiff has failed to plausibly allege a claim for a hostile work environment.  "When determining whether a hostile work environment exists, the standards under Title VII and the NYHRL are identical."  Dais v. Lane Bryant, Inc., 168 F. Supp. 2d 62, 75 (S.D.N.Y. 2001) (citation omitted).  To plead a claim for

hostile work environment, a plaintiff must produce evidence that the alleged conduct "'(1) is objectively severe or pervasive--that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex,'" or another protected characteristic. See Conklin v. Cty. of Suffolk, 859 F. Supp. 2d 415, 425 (E.D.N.Y. 2012) (quoting Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007)). In considering these elements, courts must evaluate the totality of the circumstances, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Kaytor v. Elec. Boat Corp., 609 F.3d 537, 547 (2d Cir. 2010) (alterations omitted) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 369, 126 L. Ed. 2d 295 (1993)); see also Moll v. Telesector Res. Grp., Inc., 760 F.3d 198, 203 (2d Cir. 2014) (including "facially [sex-]neutral incidents" in the totality of the circumstances analysis "so long as a reasonable fact-finder could conclude that they were, in fact, based on sex" (alteration in original; internal quotation marks and citation omitted)). The conduct must be "sufficiently continuous and concerted," and a few isolated incidents will not suffice. See Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)

(internal quotation marks and citation omitted).  But see Feingold
v. New York, 366 F.3d 138, 150 (2d Cir. 2004) ("[A] single act can
create a hostile work environment if it in fact 'work[s] a
transformation of the plaintiff's workplace.'" (quoting Alfano,
294 F.3d at 374 (second alteration in original)).

        As the Second Circuit recognized, "the occasional vulgar
banter, tinged with sexual innuendo, of coarse or boorish workers"
is not actionable.  Redd v. N.Y. Div. of Parole, 678 F.3d 166, 177
(2d Cir. 2012) (quotation marks and citation omitted).  Rather, a
court is more likely to find a hostile work environment when there
is evidence of sexual assaults, unwanted physical contact, obscene
language, unwelcome sexual solicitations.  See id.

        Here, the Complaint does not show that Plaintiff
suffered a hostile work environment.  See Compl. ¶¶ 43-44, 51-55,
66, 74, 76, 89.)  Essentially, Plaintiff asserts that GEICO
supervisors placed her under surveillance, criticized her work,
and brandished her as a "traitor."  (See, e.g., Compl. ¶¶ 29-31,
35.)  The Complaint goes on to allege that a GEICO manager "tried
to charge her for sick time" when she was involved in a car
accident.  (Compl. ¶ 32; EEOC Charge at 10, ¶ 22.)  Plaintiff's
allegations are too general to show a hostile work environment.
Indeed, nowhere in the Complaint does Plaintiff describe instances
of racial slurs, lewd remarks, or sexual discussions.  Thus,

Plaintiff's hostile work environment claim is DISMISSED WITHOUT PREJUDICE.

V.  Retaliation

Plaintiff has also failed to plausibly allege that GEICO engaged in retaliatory conduct against her.  For a retaliation claim to survive a motion to dismiss, a plaintiff must allege facts showing that: "(1) defendants discriminated--or took an adverse employment action--against him, (2) because he has opposed any unlawful employment practice."  Vega, 801 F.3d at 90 (internal quotation marks and citation omitted).  Moreover, a plaintiff's "complaints must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII. Generalized complaints about a supervisor's treatment are insufficient."  Risco v. McHugh, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012) (citing Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 108 (2d Cir. 2011)).

The Complaint, as it currently stands, contains no specific facts demonstrating any retaliation taken on behalf of GEICO or its employees.  Instead, Plaintiff alleges that after she filed an internal complaint and an EEOC charge, "Plaintiff's manager started to monitor her whereabouts much more stringently" and "started to criticize her on paperwork and written work." (Compl. ¶¶ 30, 35.)  But the Complaint does not indicate how these performance reviews created negative consequences for Plaintiff.

See <u>Stoddard v. Eastman Kodak Co.</u>, 309 F. App'x 475, 480 (affirming the district court's dismissal of a retaliation claim where the plaintiff alleged, in part, that "she was subjected to closer scrutiny by her boss"). Further, Plaintiff acknowledges that GEICO treated Plaintiff like a "traitor" even before the internal complaint and EEOC Charge were filed. (Compl. ¶ 29.) All in all, these allegations, even drawn in Plaintiff's favor, do not meet the minimal burden required under <u>Swierkiewicz</u>. 534 U.S. at 512, 122 S. Ct. at 998 (citing Fed R. Civ. P. 8(a)(2)).[8] Thus, Plaintiff's retaliation claims under Title VII and the NYSHRL are DISMISSED WITHOUT PREJUDICE.

## VI. Equal Pay Act

The EPA prohibits employers from discriminating against employees on the basis of gender "by paying higher wages to employees of the opposite sex for 'equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" <u>Belfi v. Prendergast</u>, 191 F.3d 129, 135 (2d Cir. 1999) (quoting 29 U.S.C. § 206(d)(1)). To establish a claim for discrimination under the EPA, Plaintiff must prove that "'i) the

---

[8] Plaintiff, again, requires discovery to support her retaliation claim. (<u>See</u>, <u>e.g.</u>, Pl.'s Br. at 16 ("Plaintiff deserves an opportunity to engage in discovery to check the metadata and time of creation of these negative evaluations and adverse actions . . . .").)

employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions.'" Id. (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1310 (2d Cir. 1995)). In making out a prima facie case, Plaintiff "must show that the two positions are substantially equal," not "merely comparable." Tomka, 66 F.3d at (2d Cir. 1995) (internal quotation marks and citations omitted).[9]

Taking her Complaint in the most charitable light, Plaintiff has failed to plausibly allege disparities in pay based on sex. Plaintiff broadly states that "GEICO has engaged in a widespread, deep-rooted racially discriminatory employment practice of paying [her] and other minority female employees less than it pays Caucasian and male employees" although Plaintiff, for instance, has "comparable responsibilities and more seniority, work experience and/or do the same or better quality work." (Compl. ¶ 38.) First, "the EPA, true to its name, only prohibits the payment of unequal wages to employees on the basis of sex," not on the basis of race. See Emmons v. City Univ. of N.Y., 715

---

[9] Similar to the burden-shifting analysis under Title VII, once Plaintiffs make out a prima facie case of discrimination under the Equal Pay Act, the burden then shifts to Defendants to demonstrate that the wage disparity is based on: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." Belfi, 191 F.3d at 136 (quoting 29 U.S.C. § 206(d)(1)).

F. Supp. 2d 394, 413 (E.D.N.Y. 2010) (internal quotation marks and citations omitted). Even still, Plaintiff is required to do more than offer conclusory allegations. The Complaint does not provide sufficient facts to establish a reasonable inference that her work responsibilities were substantially similar to her male colleagues. Plaintiff, rather, makes conclusory allegations that male attorneys receive "preferred and/or special assignments" without discussing the qualifications of either male or female attorneys. (Compl. ¶ 11); see also Aguilar v. N.Y. Convention Ctr. Operating Corp., 174 F. Supp. 2d 49, 55 (S.D.N.Y. 2001) ("The fact that male employees are offered more work than female employees may well constitute a violation of any number of federal and state employment discrimination statutes, but it simply cannot form the basis of an Equal Pay Act claim."). Further, Plaintiff acknowledges that three individuals decided which applicants would receive the supervisory attorney position and two of those decision makers were women. (EEOC Charge at 9, ¶ 15); see also Fosen v. The New York Times, No. 03-CV-3785, 2006 WL 2927611, at *5 (S.D.N.Y. Oct. 11, 2006) ("Any inference of discrimination was also critically undermined by the fact that the supervisors responsible for Plaintiff's termination and transfer were both women . . . .") Thus, Plaintiff's EPA claim is DISMISSED WITHOUT PREJUDICE.

## VII. Lily Ledbetter Fair Pay Act

Plaintiff's argument under the FPA is easily dispatched. As the Second Circuit made clear, "[t]he Lily Ledbetter Fair Pay Act does not provide a separate theory of recovery, but instead establishes background rules for timing and damages in equal pay claims brought under other statutes." Talwar v. Staten Island Univ. Hosp., 610 F. App'x 28, 30 n.2 (2d Cir. 2015). Thus, Plaintiff's FPA claim is DISMISSED WITH PREJUDICE.

## VIII. New York City Human Rights Law

Based on the current iteration of the Complaint, the Court finds that Plaintiff cannot assert claims under the NYCHRL. Plaintiff both lives and works in Long Island, New York. (Compl. ¶¶ 1, 3.) Nevertheless, Plaintiff contends that if she received the supervisory attorney position, she would have handled cases in "New York City Civil Courts and District Courts." (Wang Decl., Docket Entry 18-1, ¶ 8.) "To state a claim under the NYCHRL, the Plaintiff must allege that the Defendant discriminated against her within the boundaries of New York City." Robles v. Cox and Cox, Inc., 841 F. Supp. 2d 615, 623 (E.D.N.Y. 2012) (internal quotation marks and citations omitted). Although the alleged conduct here occurred on Long Island, (Compl. ¶¶ 1, 3), "'courts look to the location of the impact of the offensive conduct.'" Robles, 841 F. Supp. 2d at 623 (quoting Curto v. Med. World Commc'ns, Inc., 388 F. Supp. 2d 101, 109 (E.D.N.Y. 2005)).

First, the Complaint fails to indicate how the impact of GEICO's alleged conduct was felt in New York City. Allegedly, GEICO supervisors harassed Plaintiff and retaliated against her on Long Island. (Compl. ¶¶ 29-32, 35); see also Hoffman v. Parade Publ'ns, 15 N.Y.3d 285, 291, 933 N.E.2d 744, 747, 907 N.Y.S.2d 145 (2010) (confining the NYCHRL "to those who are meant to be protected--those who work in the city"); Fried v. LVI Servs., Inc., 500 F. App'x 39, 42 (2d Cir. 2012) (affirming the district court's grant of summary judgment on an NYCHRL claim when the plaintiff lived and worked in Connecticut even though he "frequently communicated with [defendant's] New York headquarters and attended meetings in New York City"). Second, even if the impact of GEICO's conduct did reach New York City, Plaintiff has failed to plausibly allege that GEICO discriminated and retaliated against her, as discussed above. Thus, Plaintiff's NYCHRL claims are DISMISSED WITHOUT PREJUDICE.

IX. <u>Intentional Infliction of Emotional Distress ("IIED")</u>

Plaintiff has also failed to plausibly allege an IIED claim. To prevail on an IIED claim, Plaintiff must show that: "(1) that the actor intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of its conduct, (2) that the conduct was extreme and outrageous, (3) that the defendant's conduct was the cause of the plaintiff's distress, and (4) that the emotional distress

sustained by the plaintiff was severe." <u>Duse v. Int'l Bus.</u>
<u>Machines Corp.</u>, 252 F.3d 151, 156 (2d Cir. 2001). In making that
showing, Plaintiff must overcome a significant hurdle: The conduct
must be "so outrageous in character, and so extreme in degree, as
to go beyond all possible bounds of decency, and to be regarded as
atrocious, and utterly intolerable in a civilized community." <u>See</u>
<u>Sheila C. v. Povich</u>, 11 A.D.3d 120, 130-31, 781 N.Y.S.2d 342, 351
(1st Dep't 2004) (internal quotation marks and citations omitted);
<u>Bender v. City of N.Y.</u>, 78 F.3d 787, 790 (2d Cir. 1996) ("New York
sets a high threshold for conduct that is 'extreme and outrageous'
enough to constitute intentional infliction of emotional
distress.") (citations omitted). "Such extreme and outrageous
conduct must be <u>clearly</u> alleged . . .," <u>Sheila C.</u>, 11 A.D.3d at
131 (emphasis added), and nowhere in the Complaint does Plaintiff
assert allegations of that magnitude. Thus, Plaintiff's IIED claim
is DISMISSED WITHOUT PREJUDICE.

X.    <u>Negligent Infliction of Emotional Distress ("NIED")</u>

        Plaintiff's NIED claim is preempted by the exclusivity
provision of the Workers' Compensation Law. N.Y. Workers' Comp.
Law § 11 (McKinney 2009). Plaintiff, relying on <u>Zaltz v. Wells</u>
<u>Fargo Home Mortgage</u>, contests this conclusion, arguing that an
exception applies to this exclusivity rule because "plaintiff's
NIED claims [are] intertwined with her IIED claim." (Pl.'s Br. at
23.) But nothing in <u>Zaltz</u> stands for that proposition. No. 08-

CV-11225, 2010 WL 3026536, at *4 (S.D.N.Y. Aug. 2, 2010).  Rather, the United States District Court for the Southern District of New York observed that intentional torts, such as an IIED claim, fall outside of the Workers' Compensation Law.  Id. ("Since it seems that the asserted claims are intentional torts, they fall within an exception to the general exclusivity of the Workers' Compensation Law.")  Thus, Plaintiff's NIED claim is DISMISSED WITH PREJUDICE.

XI.  <u>Leave to Replead</u>

The Court's usual practice is to allow a plaintiff leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2); <u>Hayden v. Cnty. of Nassau</u>, 180 F.3d 42, 53 (2d Cir. 1999) (citing <u>Ronzani v. Sanofi S.A.</u>, 889 F.2d 195, 198 (2d Cir. 1990)); <u>see also</u> Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  Plaintiff is permitted to replead to cure the deficiencies in her Complaint and incorporate the newly made allegations from her opposition papers.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.]

<u>CONCLUSION</u>

Defendant's motion to dismiss the Complaint (Docket Entry 10) is GRANTED. Plaintiff's claims under the Lily Ledbetter Fair Pay Act and for negligent infliction of emotional distress are DISMISSED WITH PREJUDICE. Plaintiff's remaining claims against Defendant are DISMISSED WITHOUT PREJUDICE and with leave to replead in a manner consistent with this Court's opinion. If Plaintiff wishes to file an Amended Complaint, she must do so within thirty (30) days of the date of this Memorandum and Order. If Plaintiff fails to do so, her claims will be dismissed with prejudice, and the case will be closed.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    March 31, 2016
          Central Islip, New York